(No. 13898.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* PAUL WILSON *et al.*—(WILLIAM DEVITT *et al.* Plaintiffs in Error.)

*Opinion filed June 22, 1921.*

1. CRIMINAL LAW—*intoxicating liquor is a subject of larceny although kept by owner for an unlawful purpose.* Burglary or larceny may be committed where personal property which is the subject of ownership is taken, whether or not the property is kept for a lawful purpose, and whisky, although it is contraband under the national Prohibition act, is the subject of larceny whether or not it has a market value.

2. SAME—*statements in presence of accused charging his guilt are not admissible if denied by him.* Statements made in the presence of the accused charging his guilt are admitted in evidence not because they were made in his presence but only on the ground that his conduct under the circumstances raises a justifiable inference that he has expressly or impliedly ratified and adopted the statements as his own, and the evidence is incompetent if the accused denies the statements at the time they are made.

3. SAME—*when failure to mark instructions as "given" is not ground for reversal.* Where the court writes and gives to the jury every instruction asked, a failure to mark any of the instructions as "given" is not ground for reversal.

4. SAME—*what should be embraced in instruction as to effect of possession of stolen property.* An instruction that the possession of stolen property, the proceeds of a robbery or burglary, soon after the commission of the offense is *prima facie* evidence of guilt of the person in whose possession the property is found, should require the jury to find that a burglary had been committed, that the stolen property was in the possession of the defendant soon afterward, and that the possession was not explained by other evidence or the surrounding circumstances.

5. SAME—*when presumption of guilt from possession of stolen property will warrant a conviction of larceny.* If the defendant's possession of stolen property is recent after the theft and there are no attendant circumstances or other evidence to rebut the presumption or create a reasonable doubt of guilt, the fact of possession will warrant a conviction of larceny.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. HUGO PAM, Judge, presiding.

298-17

EUGENE L. McGARRY, (THOMAS E. SWANSON, of counsel,) for plaintiffs in error.

EDWARD J. BRUNDAGE, Attorney General, ROBERT E. CROWE, State's Attorney, and EDWARD C. FITCH, (HENRY T. CHACE, JR., and EDWARD E. WILSON, of counsel,) for the People.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

An indictment was returned to the criminal court of Cook county charging the plaintiffs in error, William Devitt and Frank McDonald, together with Paul Wilson, Harry J. Sherman and George Colbeck, with burglary of the store of Samuel Fox and stealing therefrom ten cases of whisky. Wilson and the plaintiffs in error were tried, and Wilson was acquitted and plaintiffs in error were found guilty and sentenced to the Illinois State Reformatory.

Samuel Fox testified that the burglary was committed and several cases of whisky stolen which were of the value of $26.50 per case, and the first proposition of counsel in support of the errors assigned is that the evidence failed to support the charge of burglary, because whisky, being contraband under the National Prohibition act, has no value except where it is purchased and kept under a government permit, and is therefore not the subject of larceny unless the indictment charges and the proof shows that a permit has been obtained by the person in whose possession the whisky is kept. Burglary may be committed where personal property which is the subject of ownership is taken, and the fact that the property is kept for an unlawful purpose does not change the nature of the crime. This has been decided as to intoxicating liquors kept for sale contrary to the provisions of a statute, or property used for gambling purposes contrary to law, or a pistol the sale of which was forbidden. (*State* v. *May,* 20 Iowa, 305; *Bales* v. *State,* 3 W. Va. 685; *Commonwealth* v. *Smith,* 129 Mass.

111; *Osborn* v. *State,* 115 Tenn. 717; 5 Ann. Cas. 797; 17 R. C. L. 29.) The whisky had an actual value whether it had a market value or not and was the subject of larceny.

The principal complaints of rulings during the trial are that the court permitted the People to examine a witness as to his statements, made in the presence of the defendants, concerning the commission of the crime and unduly abridged the cross-examination of the same witness. The direct evidence of the commission of the crime consisted of the testimony of Harry J. Sherman, who was an accomplice and included in the indictment but was not on trial, and the objection is to evidence of statements made by him, in the presence of the plaintiffs in error, corresponding with his testimony at the trial. Such testimony is admitted not because the statement was made in the presence of the accused but because the conduct of the accused and the circumstances were such as to raise a justifiable inference that the accused expressly or impliedly ratified and adopted the statement as his own. A court should never admit such testimony unless it is made to appear that the evidence would justify a conclusion that the accused admitted the statement to be true. If the statement is made and the accused denies it the evidence is incompetent, both because there is no basis for an inference that he admitted its truth and because it would be a mere reiteration of the testimony of the witness as to the fact and the jury might give credit to the statement and discredit the denial. (*People* v. *Pfanschmidt,* 262 Ill. 411; *People* v. *Schallman,* 273 id. 564; *People* v. *Jordan,* 292 id. 514; *People* v. *Seff,* 296 id. 120.) In this case the rule of law was not disregarded by the People in the examination of the witness Sherman. On his direct examination nothing was said about any statement in the presence of the defendants and no evidence of that kind was offered. The three defendants were represented by different attorneys, and one of them on the cross-examination of Sherman brought out

the fact that he was called into a room in the police station, in the presence of the plaintiffs in error, and that he then told everything about the affair and McDonald said he was crazy. Another attorney cross-examined Sherman as to the same matter, and he answered that Devitt did not say that he was a damned liar but McDonald did say he was crazy. The evident purpose of these cross-examinations was to present to the jury denials by Devitt and McDonald. When the police officer who was present at the time of the statement was examined for the People, he said that when Sherman was taken back to his cell the witness asked McDonald what he had to say, and he replied, "Nothing at all." On his cross-examination the witness said that Devitt was taken back with Sherman and the witness talked to McDonald, and no objection was made when the police officer testified that McDonald replied, "Nothing at all." Devitt testified that when Sherman made the statement he told Sherman that "he was a damned liar" and McDonald said, "You are crazy." McDonald testified that he told Sherman, when the statement was made, that he was crazy and that Devitt said he was a damned liar. On motion the court struck out the evidence as against McDonald, as there was no contradiction of the fact that he told Sherman he was crazy, and there could be no inference of the truth of the statement so far as McDonald was concerned. The whole matter of the statement and replies having been brought out by the plaintiffs in error, Devitt cannot complain that the evidence went to the jury for consideration, whether there was a denial or admission on his part.

The other objection is that the court unduly abridged the cross-examination of Sherman designed to show that he had been offered immunity for his testimony, but there was no restriction in that respect. The abstract does not show that any question was asked that Sherman was not permitted to answer, and he testified that he had not been promised immunity.

The court wrote and gave to the jury every instruction asked but did not mark any of them given. There was no distinction in the marking or failure to mark the instructions so as to prejudice the plaintiffs in error in any way, and the instructions having been given to the jury, a failure to mark them is not ground for reversal. *Tobin* v. *People,* 101 Ill. 121.

Instruction No. 1 given at the request of the People is complained of on the ground that whisky being contraband is not the subject of larceny, and that question has been disposed of.

Instruction No. 3 is as follows:

"The court instructs the jury that the possession of stolen property, the proceeds of a robbery or burglary soon after the commission of the offense is *prima facie* evidence of the guilt of the person in whose possession the property is found."

It is not error to give to a jury in a criminal case statutory provisions in the language of the statute without application to the particular case, but the practice of giving rules of law in that way is not approved and is objectionable, although the practice is quite common under our system of instructing juries by separate written statements of the law. The giving of such an instruction as this without requiring the jury to find that a burglary had been committed, that the stolen property was in the possession of the defendants soon afterward, and that the possession was not explained by other evidence or the surrounding circumstances, is subject to just criticism. (*People* v. *Surace,* 295 Ill. 604.) If the possession of stolen property is recent after the theft and there are no attendant circumstances or other evidence to rebut the presumption or create a reasonable doubt of guilt the fact of possession will warrant a conviction. (*Comfort* v. *People,* 54 Ill. 404; *People* v. *Deluce,* 237 id. 541.) While the instruction ought not to have been given, the judgment should not be reversed

merely on account of it if it is apparent that it could not have influenced the verdict. ˙The defense of the plaintiffs in error was that they had nothing to do with the burglary and did not have possession of the whisky, and if they did have such possession, as the evidence tended to prove, it was immediately after the burglary, and the possession was unexplained either by any evidence or the attendant circumstances.

Harry J. Sherman testified that he was a chauffeur and driver for the Brown Taxi Service; that he received an order about nine o'clock in the evening of April 2, 1920, to go to a saloon at Erie and Leavitt streets; that he went there and found plaintiffs in error and Wilson and Colbeck; that they sat around there until eleven o'clock or a quarter to twelve, when they left the saloon and went to a restaurant at Madison and Seeley streets and had chop suey; that they then went to Campbell's Gardens and sat around there for from forty-five minutes to an hour, when he was directed to drive the car on various streets; that they finally stopped near the drug store and Wilson, McDonald and Devitt got out; that McDonald came running back from the drug store with a crow-bar in his hand and threw it in the cab; that McDonald stood by the cab and Wilson was standing on the corner and Devitt was at the drug store; that they put whisky in the car—he thought eight or ten cases; that he pulled over to Chicago and Robey streets to an area in a blind alley; that the plaintiffs in error carried the whisky into the areaway; that there came a command to hold up their hands, and a detective searched the car and found the crow-bar, a couple of bottles of olive oil and some whisky bottles. A detective testified that he and a police sergeant stopped the car, and McDonald, Devitt and Sherman were in the car; that they found an iron bar two feet long in the car, two bottles of whisky in the cab and four cases of whisky in the passageway of a clubroom, called the Lakewood Club, frequented by the plaintiffs in

error. The police sergeant testified to the same effect. The defendants denied every item of evidence tending to incriminate them or that they were connected in any way with the burglary.

It is insisted that the verdict was based upon nothing but the testimony of Sherman, who was an accomplice, and that his testimony was insufficient to establish guilt beyond a reasonable doubt. It is not true that the verdict rested alone upon the testimony of Sherman, but he was corroborated in material matters by the two policemen. In the view that the jury might regard the case as resting on the testimony of Sherman, the court gave the following instruction:

"The jury are instructed that there are witnesses which are known in law as 'accomplices,' and that while it is a rule of law, that a person accused of crime may be convicted upon the uncorroborated testimony of an accomplice, still you are instructed that the testimony of an accomplice is liable to grave suspicions, and you should always act upon such testimony with great care and caution, and subject it to careful examination in the light of all the other evidence in the case; and you should consider the influence under which such testimony is given, and whether the purpose of the witness is to shield himself from punishment, to obtain some benefit for himself, or to gratify his malice, then the jury ought not to convict upon such testimony, unless, after a careful examination of such testimony they are satisfied beyond a reasonable doubt of its truth, and that they can safely rely upon it."

The jury having been fully instructed concerning their duty in considering the testimony of Sherman and having given him credit, and the verdict having been approved by the trial judge, this court cannot say that the jury were not fully justified in finding the plaintiffs in error guilty beyond a reasonable doubt.

The judgment is affirmed.    *Judgment affirmed.*